IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-00493-SKC

S.L.B.,

    Plaintiff,

v.

ANDREW SAUL, *Commissioner of Social Security*,

    Defendant.

## OPINION AND ORDER

This action is before the Court under Title II of the Social Security Act, 42 U.S.C. § 401 et. seq., for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying S.L.B.'s ("Plaintiff") application for Disability Insurance Benefits ("DIB"). The parties have consented to the Magistrate Judge's jurisdiction. [Dkt. 11.] The Court has carefully considered the Complaint [Dkt. 1], related briefing,[1] the social security administrative record [Dkt. 12], and applicable law. No hearing is necessary. For the following reasons, the Court AFFIRMS the Commissioner's final decision.

### A.    BACKGROUND

---

[1] Plaintiff's Opening Brief [Dkt. 13], Defendant's Response Brief [Dkt. 14], Plaintiff's Reply Brief [Dkt. 15], and Defendant's Sur-Reply [Dkt. 18.]

1

Plaintiff applied for DIB on September 22, 2017, alleging she became disabled beginning April 26, 2017. [AR at 10.] The claim was denied on December 4, 2017. She then filed a written request for a hearing. [*Id*.] An administrative hearing was held on April 9, 2019. [*Id*.] The Administrative Law Judge, Kathryn D. Burgchardt ("ALJ"), found Plaintiff was not disabled in a decision dated April 24, 2019 (the "Decision"). [AR at 7-20.]

Plaintiff appealed the Decision to the Appeals Council, which denied the appeal. [*Id*. at 1-3.] The Decision of the ALJ thus became the Final Decision of the Commissioner ("Final Decision"). 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff timely filed this action on February 24, 2020. [Dkt. 1.] The Court has jurisdiction to review the Final Decision under 42 U.S.C. § 405(g).

## B. DIB FRAMEWORK

A person is disabled within the meaning of the Social Security Act "only if [her] physical and/or mental impairments preclude [her] from performing both [her] previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2).) "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any

substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that [she] can physically perform certain jobs; it also requires a determination that the claimant *can hold* whatever job [she] finds for a significant period of time." *Fritz v. Colvin*, 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 9234, at *2 (citing 20 C.F.R. § 404.1520(b)–(f)). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416,

3

Subpt. P, App. 1) and a duration requirement are deemed disabling at step three with no need to proceed further in the five-step analysis. *See* 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step"). Between the third and fourth steps, the ALJ must assess the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(e). The claimant has the burden of proof in steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner bears the burden of proof at step five. *Id.*

The ALJ followed the five-step process. [AR at 12-20.] She determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. [AR at 12.] At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 26, 2017. [*Id.*] At step two, she found that Plaintiff had the following severe impairments: (1) asthma; (2) hip osteoarthritis and development dysplasia; and (3) anxiety disorder.[2] [*Id.*] At step three, the ALJ found that Plaintiff's impairments did not meet, or medically equal, a listed impairment. [*Id.* at 13.] She then found she had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to work that is unskilled, with an SVP of 1 or 2. Requiring routine tasks and simple decision making; not in close proximity to coworkers or supervisors (meaning that the individual could not function as a member of a team), and minimal to no direct contact with the public. In addition, the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. She can stand and/or

---

[2] She also found Plaintiff had arthritis of the right wrist and a learning disability. [AR at 12,13.] She determined these impairments were non-severe. [*Id.*]

4

> walk with normal breaks for six hours out of an eight-hour workday. She can sit with normal breaks for six hours out of an eight-hour workday. The claimant can perform pushing and pulling with the upper and lower extremities within the aforementioned weight limitations. The claimant can occasionally crouch, kneel, crawl and climb ramps and stairs. She cannot climb ladders, ropes or scaffolds. The claimant can frequently stoop. She should avoid extreme cold, unprotected heights and moving machinery.

[AR at 14-15.]

In finding this RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." [AR at 15.] The ALJ also "considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR 404.1520c;" Plaintiff's hearing testimony; and the testimony of Daniel B. Best (an impartial vocational expert). [*Id.* at 10, 15] The ALJ explained the persuasiveness she gave to each of the opinions she considered, and why. [*Id.* at 15-19.]

At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a claims clerk (Sedentary, SVP 4). [*Id.* at 19.] At step five, the ALJ concluded Plaintiff's ability to perform all or substantially all of the requirements of light work was impeded by additional limitations. [*Id.* at 20.] "To determine the extent to which these limitations erode the unskilled light occupational base," at the hearing, the ALJ asked the vocational expert ("VE") whether jobs existed in the national economy for someone with Plaintiff's age (younger individual), education (high school), work experience, and RFC (unskilled, SVP 1 or 2). [*Id.* at 131.] The VE testified that, given

5

all these factors, Plaintiff would be able to perform the requirements of representative occupations such as: hand packager, production assembler, and electronic assembly worker. [*Id*. at 131-32.] The ALJ determined the VE's testimony was consistent with information in the Dictionary of Occupational Titles ("DOT"). [*Id*. at 20.] And based on that testimony, the ALJ found Plaintiff was not under a disability at any time from April 26, 2017 (alleged onset date) through April 24, 2019 (the date of the Final Decision). [*Id*.]

### C. STANDARD OF REVIEW

In reviewing the Final Decision, the Court's

> review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotation marks and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). *See also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

A court may not reverse an ALJ just because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings,

6

we may not displace the agency's choice between two fairly conflicting views." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

### D. ANALYSIS

Plaintiff stipulates to the ALJ's assessment of her physical impairments and limitations, but not the ALJ's "consideration, summary, weight, and assessment of her mental impairments," arguing: (1) "the ALJ could not accept the VE testimony" because it conflicts with agency policy; and (2) "the ALJ did not articulate good reasons for giving the opinions of Dr. Madsen less weight." [Dkt. 13, pp. 6,12,14.]

**1.   The ALJ's treatment of Dr. Madsen's Opinions**[3]

---

[3] The Court addresses Plaintiff's second argument first because it implicates the ALJ's RFC finding, which was made before the ALJ considered whether Plaintiff could perform her past work at step four or perform other work existing in significant numbers at step five.

7

Plaintiff was referred to Psychologist, Richard B. Madsen, Ph.D., for an adult mental status examination. [AR at 539.] The ALJ summarized Dr. Madsen's opinions as follows:

> Consultive psychological examiner Richard Madsen, Ph.D, opined that the claimant has moderate limitations in the ability to perform simple tasks. She has marked limitations in the ability to understand, remember or apply complex decisions. She has moderate to marked limitations in the ability to: perform activities on a consistent basis; complete a normal workday/week, and deal with normal stressors. The claimant's social interactions, in a one-on-one a [*sic*] small group setting, will be impaired at a moderate level. In a large group setting, or in a confrontational setting, the claimant will be impaired at a marked level.

AR. 18-19. The ALJ found Dr. Madsen's opinion "slightly persuasive." [*Id*. at 19.] Plaintiff argues, citing 20 C.F.R. § 404.1527(c)(1) and (5), that the ALJ should have given more weight to Dr. Madsen's opinion. And citing 20 C.F.R. § 404.1527(c)(4), Plaintiff argues the ALJ should have compared Dr. Madsen's opinions with those of Karen Robie, Ph.D., The Court disagrees.

Plaintiff filed her claim for benefits after March 27, 2017. As such, the rules in 20 C.F.R. § 404.1520c apply, and not 20 C.F.R. § 404.1527. *See generally* 20 C.F.R. § 404.1520c. Under the prior regulations, unless a medical opinion was given controlling weight, the ALJ was required to consider additional factors in determining the weight afforded to medical opinions. These factors included examining relationship, treatment relationship, supportability, consistency, specialization, and "other factors which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527.

However, under the new regulations set forth in 20 C.F.R. § 404.1520c, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. *Carr v. Saul*, No. 20-cv-02241-NRN, 2021 WL 4307085, at *2-3 (D. Colo. Sept. 22, 2021). The ALJ is only required to address the two most important factors in evaluating persuasiveness – supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).[4]

Here, the ALJ specifically addressed the persuasiveness of Dr. Madsen's opinions, finding them "slightly persuasive." The ALJ explained Dr. Madsen's opinions of marked limitations were inconsistent with the mental status exam findings from his appointment with Plaintiff as well as previous normal mental status exam findings from Plaintiff's treating providers. Moreover, the ALJ considered Dr.

---

[4] In her Reply, Plaintiff urges the Court against "dismantling [] 36 years of precedent. . ." [Dkt. 15, p.3.] This is far too dramatic. This Court is no position to "dismantle precedent;" this Court merely applies the Commission's new regulations, as it must.

9

Madsen's opinions about Plaintiff's anxiety and slow processing speed when limiting Plaintiff to unskilled work with limited contact with others.

Regarding Plaintiff's argument that the ALJ should have compared Dr. Madsen's opinions with Dr. Robie's[5] because they are "congruent," the new regulations do not require such an undertaking. Rather the ALJ is only required to consider the other factors in paragraphs (c)(3) through (c)(5) when she finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported. 20 CFR § 404.1520c(b)(3). That is not the case here. The ALJ found the opinions of the State agency psychiatrist, Ellen Ryan, more persuasive than Dr. Madsen's (moderately persuasive and slightly persuasive, respectively). [AR at 18, 19.] Further, the ALJ found Dr. Ryan's opinions were "consistent with the record as a whole," while Dr. Madsen's were not.[6] [*Id*.] The Court finds no error in the ALJ's analysis or treatment of Dr. Madsen's opinions. Substantial evidence in the record supports her conclusions.

### 2.     The ALJ's treatment of the VE's Testimony

At step five of the sequential evaluation process, the Commission bears the burden of proving that a "claimant has the residual functional capacity to do other

---

[5] The ALJ did not specifically address Dr. Robie's opinions, however, the state agency's psychiatrist, Ellen Ryan, reviewed and cited to those records in forming her opinions.

[6] Moreover, the ALJ accounted for these limitations in the RFC and the second hypothetical based on Dr. Madsen's medical record located at Exhibit 11F. [*See* AR at 130-31 ("I'd like to turn to a second hypothetical question. It's based on Exhibit 11F.").]

work [existing in significant numbers in] the national economy." 20 C.F.R. § 404.1566. When determining whether a claimant can perform other work in the national economy, the ALJ may take administrative notice of a number of sources including the DOT. *Id*. Additionally, an ALJ may utilize a VE and rely on their testimony as a basis for the ALJ's conclusions. *Id*. *See also Holt v. Colvin*, CIV 14-0024 KBM, 2015 WL 13662607, at *2 (D. N. Mex. Apr. 16, 2015) (ALJ may utilize a VE to "supply an opinion about the claimant's ability to perform work in the national economy.").

Plaintiff argues the ALJ impermissibly accepted testimony from the VE that directly contradicted published agency policy. Plaintiff asserts that instead of relying on the VE's testimony, the ALJ should have looked to the Program Operations Manual System ("POMS") as required under the combined Social Security Rulings 00-4p and 13-2p.[7] [Dkt. 13, p.8.] The Court does not agree, first because the VE's testimony was consistent with the DOT. Second, there was no conflict between the ALJ's RFC and the requirements detailed in the POMS for unskilled work.

*a. VE's testimony was consistent with the DOT*

It is well established "that the agency accepts definitions in the DOT as reliable evidence" *Marilyn C. v. Saul*, No. 2:20-cv-00339-DBP, 2021 WL 1250524, at *3 (D. Utah Apr. 5, 2021). The DOT uses a "different and considerably more extensive classification scheme for skill requirements than the agency regulations." *Id*. (citing

---

[7] The Court notes 13-2p references cases involving drug addiction and alcoholism, neither of which pertain to Plaintiff's conditions.

11

*Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999). As a result, "all kinds of implicit conflicts are possible and the categorical requirements in the DOT do not and cannot satisfactorily answer every such situation. *Id*. (citing *Gibbons v. Barnhart*, 85 Fed. App'x 88, 93 (10th Cir. 2003)).

Social Security Ruling 00-4p requires that the ALJ identify and obtain a reasonable explanation for any conflicts between the VE's testimony and the DOT and its companion publication, the SCO. *See* SSR 00-4p ("[T]his ruling emphasizes that before relying on VE [] evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs [] and information in the [DOT], including its companion publication, the [SCO] . . . and Explain in the determination or decision how any conflict that has been identified was resolved.") *See also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) ("[N]either the DOT nor the VE evidence automatically 'trumps' when there is a conflict. Instead, the Ruling directs ALJ's to 'identify and obtain a reasonable explanation for any conflicts.' Only after discharging these duties can an ALJ rely on VE testimony in making his determination at step five.") (internal citations omitted).

At the administrative hearing, the ALJ presented the VE with three hypothetical questions. In the first hypothetical, she had the VE assume, based on Dr. Thoman's and Dr. Ryan's opinions, "an individual [with] the same age, education, and past work experiences as [Plaintiff]" requiring "semi-skilled work, with a SVP of

12

1, 2, or 3, requiring attention to detail, but not more complex duties." [AR at 129.] The second hypothetical reflects the ALJ's final RFC. There, the ALJ had the VE assume an individual with Plaintiff's same age, education, and past work experiences "limited to work which is unskilled with an SVP of 1 or 2; requiring routine tasks and simple decision making; not in close proximity to coworkers or supervisors, meaning that the individual could not function as a member of a team; and only minimal to no direct contact with the public." [AR at 130-31.] The VE testified that while Plaintiff could not return to her past work, there was work in the national economy she could perform, including, hand packager, inspector position, production assembler, and electronic assembly worker. [AR at 131.]

Importantly, the VE affirmed that his testimony was consistent with the DOT and its companion publication. [AR at 132.] However, neither the DOT nor the SCO describe aspects of work such as interpersonal interaction, attendance, and inability to perform full-time work activity. [*Id.*] As such, the VE clarified that his testimony with regard to those areas was based on his 20 years of experience. [*Id.* 132-33.] Based on this explanation, the ALJ found the VE's testimony consistent with the DOT. [AR at 20.]

From the record it is clear that the VE's testimony included information not found in the DOT, but this does not render his testimony in conflict with the DOT. *See* SSR 00-4p ("Evidence from VE can include information not listed in the DOT."); *Marilyn C.*, 2021 WL 1250524, at \*3 (affirming Commissioner's decision where the

13

ALJ relied on the VE's testimony and his twenty plus years of experience to conclude that the occupations identified were consistent with plaintiff's RFC). Moreover, even if the VE's testimony was inconsistent with the DOT, the ALJ fulfilled her obligations to "identify and obtain a reasonable explanation of any conflicts between" the VE's testimony and the DOT. SSR 00-4p. *See Butts v. Colvin*, No. 14-cv-01958-KLM, 2015 WL 5341784, at *7 (D. Colo. Sept. 15, 2015) ("SSR 00-4p merely requires the ALJ to resolve any conflict between the [DOT] and the VE by 'determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.'")

    b.  *There is no conflict between Plaintiff's RFC and POMS*

Plaintiff also argues the ALJ should have relied on POMS DI 25020.010, § B(3), rather than the VE's testimony. The POMS states that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to: (1) understand, carry out, and remember simple instructions; (2) make judgments that are commensurate with the functions of unskilled work, *i.e.*, simple work-related decisions; (3) respond appropriately to supervision, coworkers and work situations; and (4) deal with changes in a routine work setting." POMS DI 25020.010(A)(3)(a).

Here, Plaintiff argues "she cannot engage in work coordination with [co-workers] (teamwork) while in proximity to others." [Dkt. 13, p. 11 (parenthetical in original).] As such, she is unable to perform unskilled work. The Court finds, however,

14

that there is no conflict between the POMS and VE's testimony. The ALJ's second hypothetical, based on her RFC, accounted for Plaintiff's inability to work as a team member. And, contrary to Plaintiff's argument, unskilled work does not mean an individual is incapable of working with co-workers or engaging in teamwork. *See Marilyn C.*, 2021 WL 1250524, at *4 ("There is nothing in [POMS 25020.01(B)(3)(g)] indicating that the inability to perform one of the fourteen listed abilities renders a claimant entirely incapable of performing all unskilled occupations.") Rather, the POMS allows for limited interaction with co-workers as long as claimants are not *unduly* distracted by them. To be sure, the ALJ took this limitation into consideration when she excluded any work where Plaintiff would be required to work as part of a team. *See Harry v. Berryhill*, No. 18-CV-02322-KLM, 2019 WL 4667996, at *10 (D. Colo. Sept. 25, 2019) ("The Tenth Circuit has stated that it is an acceptable approach for an ALJ to account for mental limitations 'by limiting claimant to particular kinds of work activity.'") (internal citations omitted); SSR 96-9P (S.S.A July 2, 1996) ("When an individual has been found to have a limited ability in one or more of these basic work activities, *it may be useful to consult a vocational resource.*") (emphasis added).

Moreover, unskilled work involves working with things, rather than people or data. *Martin v. Colvin*, No. 14-CV-02280-MJW, 2015 WL 5676980, at *7 (D. Colo. Sept. 28, 2015), *judgment entered*, No. 14-CV-02280-MJW, 2015 WL 5676982 (D. Colo. Sept. 28, 2015) (citing *Conkle v. Astrue*, 487 Fed. App'x 461, 462 (10th Cir. Oct. 12, 2012)). Overall, Plaintiff fails to identify and provide support for a clear and

15

established conflict between the VE's testimony, the DOT, and POMS. As a result, it was appropriate for the ALJ to rely on the VE's testimony as support for her conclusions. *Gibbons*, 85 Fed. App'x at 93 (citing *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000)). And, the Court finds substantial evidence in the record to support those conclusions.

### E.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

DATED: March 30, 2022.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge